**SO ORDERED.**

**SIGNED this 25 day of September, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

DEREK CHRISTOPHER PRYOR and                  CASE NO: 10-02137-8-JRL
TAMMY SHAWNTAE PRYOR,
                                                                    CHAPTER 13
    DEBTORS.
_____

DEREK CHRISTOPHER PRYOR and
TAMMY SHAWNTAE PRYOR,

    PLAINTIFFS,

                                                      ADVERSARY PROCEEDING
    v.                                                  CASE NO. 12-00055-8-JRL

BANK OF AMERICA, N.A. and
BANK OF AMERICA CORPORATION,

    DEFENDANTS.

**ORDER**

    This matter came before the court on Bank of America, N.A. and Bank of America Corporation's ("defendants") motion to dismiss the second and third causes of action asserted by Derek Christopher Pryor and Tammy Shawntae Pryor ("plaintiffs") for failure to state a claim upon

1

which relief can be granted. A hearing on the matter was held in Raleigh, North Carolina on July 26, 2012.

The plaintiffs filed their petition for relief under Chapter 13 of the Bankruptcy Code on March 18, 2010. On March 28, 2012, the plaintiffs filed the current adversary proceeding alleging violations of the automatic stay, the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 et seq., and the Telephone Consumer Protection Act of 1992 ("TCPA"), codified at 47 U.S.C § 227. The defendants responded on May 30, 2012, with their motion to dismiss the plaintiffs' second and third claims for relief. The plaintiffs responded to the motion to dismiss on June 20, 2012.

## JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

## BACKGROUND[1]

The plaintiffs were owners of record of real property located in Franklin County, North Carolina at 10 Rolling Cloud Drive, Louisburg, NC 27549 ("property"). The plaintiffs executed a loan for the property with the defendants. As a result of the loan and home purchase, the defendants hold a duly executed and enforceable deed of trust against the property securing the mortgage loan.

After the plaintiffs filed for bankruptcy protection on March 18, 2010, the court served notice of the § 341 meeting on the defendants on March 21, 2010. The plaintiffs assert that the notice was

---

[1]The facts are derived from the allegations in the plaintiffs' complaint and taken as true for purposes of a motion under Fed. R. Bank. P. 7012(b)(6) and Fed. R. Civ. P. 12(b)(6).

received by the defendants because its was not returned undelivered.  Following service, the plaintiffs continued to receive telephonic and written collection notices from the defendants.

On May 27, 2010, the defendants filed a motion for relief from stay in order to foreclose on the property.  In their motion, defendants admitted that they had knowledge of the plaintiffs' plan to surrender the property in the bankruptcy proceeding.  Thereafter, on June 14, 2010, the trustee filed the minutes of the § 341 meeting and a motion for confirmation of the plan.  The certificate of service attached to the motion indicated that the defendants were served with notice of the motion, which indicated the plaintiffs' plan to surrender the property.  During this period, the defendants continued to call and send written notices to the plaintiffs concerning collection of the underlying debt.

The plaintiffs also assert in their complaint that they began answering the collection calls from the defendants in April 2010 and informing the defendants of their bankruptcy proceeding, providing the relevant case number and the contact information of their attorney.  In addition to the official notices received through the bankruptcy proceedings, the plaintiffs personally provided the defendants with written communication of their bankruptcy proceeding, along with requests to cease collection calls.  These communications were sent through plaintiffs' counsel on September 17, 2010, October 7, 2010, and February 2, 2011.  The defendants have denied all of the allegations advanced by the plaintiffs.  As a result of the continued collection activities of the defendants, the plaintiffs filed the current adversary proceeding.

## STANDARD OF REVIEW

A pleading which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P.

7008. A statement showing entitlement to relief under Rule 8(a)(2) must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

## DISCUSSION

### I. Motion to Dismiss Plaintiffs' Second Cause of Action

The plaintiffs' second cause of action is for defendants' violation of the NCDCA. In response, the defendants filed a motion to dismiss asserting their status as a national bank regulated by the National Bank Act of 1864 ("NBA"), which ultimately preempts plaintiffs' state law claim.

### A. Preemption

Pursuant to the Supremacy Clause in the United States Constitution,[2] any state law that conflicts with a federal law is preempted. Cox v. Shalala, 112 F.3d 151, 154 (4th Cir. 1997). Any inquiry into the preemptive effect awarded to a particular statute is guided by the maxim that "the purpose of Congress is the ultimate touchstone in every pre-emption case." Altria Group, Inc. v. Good, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) (internal quotation marks and

---

[2]U.S. Const. art. VI, cl. 2 states that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding[.]"

citations omitted).

> [Preemption] [a]nalysis begins with the presumption that Congress did not intend to displace state law. Where . . . the field which Congress is said to have pre-empted has been traditionally occupied by the States, . . . the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 116, 112 S. Ct. 2374, 2392, 120 L. Ed. 2d 73 (1992) (Souter, J., dissenting) (internal quotations and citations omitted).

The Supreme Court has recognized three methods of preemption Congress may use to preempt state laws: express, implied, and conflict preemption. English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990). Express preemption occurs when Congress has made its intent to preempt state authority known through its use of explicit statutory language to that effect. Id. The second type, field preemption,[3] occurs where Congress occupies the field by "regulating so pervasively that there is no room left for the states to supplement federal law." Cox, 112 F.3d at 154 (citing Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982)). Finally, there is conflict preemption, which can occur in two ways. Conflict preemption arises where compliance with both state and federal law is impossible or when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 581 (1941) (citation omitted); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S. Ct. 1210, 1217, 10 L. Ed. 2d 248 (1963).

"[Consumer protection] laws have historically fallen into the purview of the states' broad police powers, to which the courts have afforded special solemnity." Sukumar v. Nautilus, Inc., 829

---

[3]Field preemption is also known as implied preemption.

5

F. Supp. 2d 386, 392 (W.D. Va. 2011); see, e.g., California v. ARC Am. Corp., 490 U.S. 93, 101, 109 S. Ct. 1661, 1665, 104 L. Ed. 2d 86 (1989) (describing unfair and/or deceptive business practices as "an area traditionally regulated by the States"); Aguayo v. U.S. Bank, 653 F.3d 912, 917 (9th Cir. 2011) ("[UCL] claims, rooted in California's consumer-protection laws, fall in an area that is traditionally within the state's police powers to protect its own citizens"); Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 828 (1st Cir. 1992) ("We reach this conclusion mindful of the fact that the state statute here at issue visits two areas which are squarely within the ambit of the states' historic powers . . . banking . . . and consumer protection."). Thus, any analysis on preemption should start "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Altria, 555 U.S. at 77; see Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981) (explaining that there is a "basic assumption [in preemption jurisprudence] that Congress did not intend to displace state law.").

### B. Relationship Between the NBA, the Dodd-Frank Act and OCC Regulations

The NBA was enacted "to facilitate . . . a national banking system" and to "protect[] national banks against intrusive state regulation[.]" Montgomery v. Bank of Am. Corp., 515 F. Supp. 2d 1106, 1110 (C.D. Cal. 2007) (internal quotation marks and citations omitted). Pursuant to the NBA, the Office of the Comptroller of the Currency ("OCC") is vested with the authority to regulate national banking institutions. See, e.g., 12 U.S.C. § 93a; 12 U.S.C. § 371 (giving the OCC authority over regulations for real-estate lending for all national banks). The NBA, when enacted, did not address preemption. However, the OCC promulgated regulations addressing preemption in relation to the operation of national banks in the United States. 12 C.F.R. 34.4 (2012). The Dodd-Frank

Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), signed by the President on July 21, 2010, also contained express preemption provisions affecting the operations of national banks.  See, e.g., 12 U.S.C. § 25b; H.R. Res. 4173, 111th Cong. (2010).

The relevant preemption provision in the Dodd-Frank Act states that:

State consumer financial laws are preempted, only if –

> (A) application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;
>
> (B) in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made clear by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with the applicable law; or
>
> (C) the State consumer financial law is preempted by a provision of Federal law other than title 62 of the Revised Statutes.

12 U.S.C. § 25b(b)(1); see Kurt Eggert, *Foreclosing on the Federal Power Grab: Dodd-Frank, Preemption, and the State Role in Mortgage Servicing Regulation*, 15 Chap. L. Rev. 171, 217 (2010) ("Dodd-Frank significantly limits federal preemption of state consumer financial laws, even as to national banks and thrifts, and in many ways signals an explicit return to the law as it stood . . . before the OTS and OCC made their preemption power grabs.").  This preemption standard in the Dodd-Frank Act codified the Supreme Court's decision in Barnett Bank and serves as the guide for preemption analysis in regards to national banks.

After the Dodd-Frank Act was enacted, the OCC revised its own regulations to mirror the preemption framework present in the Dodd-Frank Act.  12 C.F.R. § 34.4 contains the preemption

7

regulations relating to real estate lending by banks. It states: "(a) A national bank may make real estate loans under 12 U.S.C. [§] 371 and [12 C.F.R.] § 34.3, without regard to state law limitations concerning: . . . (10) Process, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 34.4(a)(10). Subsection (b) contains a savings clause that explicitly lists several areas of state law that are presumptively not preempted, however. It provides:

> (b) State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996):
> (1) Contracts;
> (2) Torts;
> (3) Criminal law;[ . . . ]
> (4) Homestead laws specified in 12 U.S.C. 1462a(f);
> *(5) Rights to collect debts;*
> (6) Acquisition and transfer of real property;
> (7) Taxation;
> (8) Zoning; and
> (9) Any other law that the OCC determines to be applicable to national banks in accordance with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996), or that is made applicable by Federal law.

12 C.F.R. § 34.4 (emphasis added). This savings clause in subsection (b) of 12 C.F.R. § 34.4 emulates the Dodd-Frank Act in its codification of the Barnett Bank decision as the benchmark for analyzing preemption in claims asserted against national banks under the NBA. The NCDCA falls squarely within 12 C.F.R. § 34.4(b)(5) as a type of state law that is not inconsistent with the real estate lending powers of national banks; therefore, the NCDCA is not preempted by the NBA, unless the Barnett Bank analysis so dictates.

### C. Barnett Bank & Conflict Preemption

In Barnett Bank, the Supreme Court of the United States concluded that a federal statute permitting national banks to sell insurance in small towns preempted a state statute forbidding the practice. Barnett Bank, N.A. v. Nelson, 517 U.S. 25, 37, 116 S. Ct. 1103, 1111, 134 L. Ed. 2d 237 (1996). The Court emphasized that the two statutes were in "irreconcilable conflict." Id. The state statute at issue in Barnett Bank prohibited banks from engaging in practices that the federal statute expressly allowed, and the state statute became "an obstacle to the accomplishment" of one of the purposes of the federal law. Id.

By codifying the Barnett Bank decision, the Dodd-Frank Act directs courts to determine preemption by analyzing whether a state law is "irreconcilably in conflict" with the NBA. Meluzio v. Capital One Bank, N.A., 469 B.R. 250, 255 (N.D. W. Va. 2012). Thus, courts must now determine whether the state measure "either (1) imposes an obligation on a national bank that is in direct conflict with federal law, or (2) stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Meluzio 469 B.R. at 255 (citing Cline v. Bank of America, N.A., 823 F. Supp. 2d 387, 397-98 (S.D. W. Va. 2011) (citation omitted))

### D. Effective Date & Retroactivity

In applying conflict preemption principles to the issues before the court it becomes pertinent to determine which version of the statutes and regulations to analyze. The Dodd-Frank Act was signed into law on July 21, 2010, becoming effective on the "designated transfer date," which was designated by the Secretary of the Treasury as July 21, 2011. See, e.g., Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1048, 124 Stat. 1376, 2018 (2010); 12 U.S.C. § 5551; 75 Fed. Reg. 57252 (Sept 10, 2010) (designating the effective transfer date of the

Dodd-Frank Act as July 21, 2011). The plaintiffs entered into their loan with the defendants prior to the enactment of the Dodd-Frank Act.

Sections 1043 and 1044 of the Dodd-Frank Act are strong evidence of Congress' intent regarding the retroactivity of the preemption framework established by the legislation. Section 1044 of the Dodd-Frank Act, entitled "STATE LAW PREEMPTION STANDARDS FOR NATIONAL BANKS AND SUBSIDIARIES *CLARIFIED*[ ]" states as follows: "In General.-- Chapter one of title LXII of the Revised Statutes of the United States (12 U.S.C. 21 et seq.) is *amended* by inserting after section 5136B the following new section: 'Sec. 5136C.'" 111 Pub. L. No. 203, § 1048, 124 Stat. 1376, 2014 (emphasis added). The plain meaning of the words "clarified" and "amended" indicate the Congressional intent was just that, to clarify and amend the existing preemption guidelines contained in the regulations. Section 1043 of the Dodd-Frank Act, codified as 12 U.S.C. § 5553, has also been cited in recent preemption decisions as a statement of the intent of Congress that state law is preempted. It states:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law ***to any contract entered into on or before the date of enactment of this Act***, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

12 U.S.C. § 5553 (emphasis added). The court agrees with Cline and interprets the above-emphasized language to imply that it only prevents changes in the law to apply to any pre-existing contracts entered into by a national bank. It does not serve, however, to "effectively insulate those institutions from generally applicable state consumer protection actions aimed at post-contractual

collections activities." Cline, 823 F. Supp. 2d at 396.

The Court of Appeals for the Fourth Circuit has also addressed the subject of retroactivity in Chambers v. Reno and determined as follows:

> A new statute does not produce a retroactive effect merely because it is applied in a case arising from conduct antedating the statute's enactment. The question instead is whether the new provision attaches new legal consequences to events completed before its enactment. A statute would attach new legal consequences to prior events if its application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. The question of whether a new statute attaches new legal consequences to prior conduct demands a commonsense, functional judgment that should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.

Chambers v. Reno, 307 F.3d 284, 289 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, the question then becomes whether the enactment of the Dodd-Frank Act impaired the rights of, increased the liabilities of, or imposed new duties upon the defendants' such that it should not be applied to the claims before this court.

There is no indication that the recent Dodd-Frank amendments have impaired the defendants' rights, increased their liability, or imposed new duties on the defendants. The defendants' right to collect the debt owed will not have been affected and is subject to underlying contractual agreements and the plaintiffs' bankruptcy proceeding just as it would have been had the Dodd-Frank Act preemption provisions not applied. There is certainly no increased liability placed on the defendants either. Finally, there are no additional duties imposed on the defendants. The state statutes at issue prohibit debt collectors from using threats, deception, harassment, or any unconscionable means to collect debts. See, e.g., N.C. Gen. Stat. §§ 75-51 (prohibiting the use of threats or coercion as a mean of collecting a debt), 75-52 (forbidding debt collectors from engaging in oppressive, harassing or abusive conduct in an attempt to collect any debt); 75-54 ("No debt collector shall collect or

11

attempt to collect a debt . . . by any fraudulent, deceptive or misleading representation."), 75-55 (disallowing the collection of "any debt by use of any unconscionable means."). Requiring the defendants to refrain from any these methods of collecting a debt should not be considered a new duty on the defendants. See Williams v. HomEq Servicing Corp., 184 N.C. App. 413, 421-22, 646 S.E.2d 381, 386-87 (2007) (finding sufficient evidence of harassment where consumers were subjected to approximately 2,200 demeaning and rude calls over a period of six years, sometimes up to six times per day). As a result, the application of the Dodd-Frank Act provisions regarding preemption of the NCDCA does not serve an impermissible retroactive effect.

Although the defendants contend that preemption provisions in the Dodd-Frank Act do not apply retroactively and its preemption provisions are not relevant to the case, this court interprets the Dodd-Frank Act differently. It finds that the Dodd-Frank Act serves as a clarification to existing portions of the NBA, as opposed to a substantive change to the law. The statutory language in the NBA, the Dodd-Frank Act and federal regulations along with other recent decisions interpreting the retroactivity of the provisions in the Dodd-Frank Act support this view.

### E. Applicability of NCDCA to OCC Regulation 12 C.F.R. § 34.4

Having determined that the NCDCA is not preempted by the NBA under the recent amendments to the preemption framework made by Dodd-Frank Act, the court must ascertain whether the OCC Regulation 12 C.F.R. § 34.4 preempts the NCDCA. As previously mentioned, the current verison of 12 C.F.R.§ 34.4 ties its preemption provisions to the Barnett Bank decision in a similar manner to the Dodd-Frank Act. See 12 C.F.R. § 34.4(b). Therefore, preemption only applies to state laws that either "(1) impose an obligation that is in direct conflict with federal law, or (2) stand as an obstacle to the accomplishment of the full purposes and objectives of Congress." Cline,

823 F. Supp. 2d at 398.

The NCDCA's prohibition of harassing, fraudulent, and unconscionable behavior in the collection of a debt does not directly conflict with any federal law cited by the defendants. Furthermore, limiting the behavior described in the NCDCA does not seem to stand as an obstacle to the purposes of Congress in regulating the activity of national banks. In fact, the NCDCA offers consumers greater protection from abusive and harassing business practices employed by certain debt collectors. The defendants will still be allowed to make and collect on loans, but must refrain from using prohibited methods, as must all debt collectors in North Carolina. As a result, the OCC's regulations do not operate to preempt the NCDCA.

## II. Motion to Dismiss Plaintiffs' Third Cause of Action

The defendants also seek dismissal the plaintiffs' third cause of action for alleged violations of the TCPA. The plaintiffs allege that the defendants used an "automatic telephone dialing system" defined by that statute as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). Furthermore, the plaintiffs claim that the defendants used this automated dialing system to make non-emergency calls to the plaintiffs' cell-phones without "prior express consent". 47 U.S.C. § 227(b)(1)(A)(iii).

These allegations, for purposes of Federal Rule of Civil Procedure 12(b)(6) and Federal Bankruptcy Rule of Procedure 7012(b)(6), clearly state a claim under which relief may be granted. Issues of consent and any subsequent revocation by the plaintiffs, raised by the parties at oral

argument, are to be decided on a fuller factual record.[4] Thus, the defendants' motion to dismiss plaintiffs' third claim for relief is denied.

## CONCLUSION

Based on the foregoing, the defendants' motion to dismiss plaintiffs' second claim for relief based on the NCDCA is **DENIED** on the grounds that it is not preempted by the NBA or OCC Regulation 12 C.F.R. § 34. Similarly, the defendants' motion to dismiss plaintiffs' third claim for relief based on the TCPA is **DENIED**.

## END OF DOCUMENT

---

[4] At this stage of the litigation, the factual record regarding whether oral or written consent was given by the plaintiffs and any subsequent revocation, is wholly insufficient. Based on the applicable standard of review and insufficient factual record addressing these issues, it would be improper for the court to grant dismissal of plaintiffs' third claim for relief under the TCPA.